IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| BASIL MOHANDIE, <br><br> Plaintiff, <br><br> v. <br><br> JOHN VARGA, and WEXFORD HEALTH SOURCES, INC, <br><br> Defendants. | Case No. 3:17-cv-50355 <br><br> Honorable Iain D. Johnston |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Basil Mohandie, previously incarcerated at Dixon Correctional Center, brought this action against Warden John Varga and Wexford Health Sources, Inc. ("Wexford") pursuant to 42 U.S.C. § 1983, the Americans with Disabilities Act, and the Rehabilitation Act. Dkt. 54. Mohandie, who suffers from Autism Spectrum Disorder, *id.* ¶ 6, has difficulty communicating with other people, *id.* ¶ 7. As a result, he struggles with maintaining appropriate behavior. *Id.* ¶ 8. He struggles to engage in conversation and to express his concerns and needs. *Id.* ¶ 15.

Although Mohandie's complaint does not make clear what accommodations he requested or when, he attached to the second-amended complaint an "STC Double Celling Profile/Vote Sheet," which implies that he asked to be housed alone due to his condition. *Id.* at 7. Mohandie alleges that this sheet is used as one criterion when making the determination of whether to house an inmate alone. *Id.* ¶ 12. That sheet, signed by four different people, explained that Mohandie exhibited "no active psychosis and is stable and at this time." *Id.* at 7. Under "level of social

1

skills," the sheet noted that Mohandie was "able to appropriately engage in conversation [and] express concerns/needs," but also that Mohandie exhibited "poor to minimal cooperation [and] participation." *Id.*

Mohandie asserts that these determinations were erroneous, without factual support, can only be explained by a desire to cause him harm, or otherwise failed to be accompanied by a legible signature. *Id.* ¶¶ 16–17. He also alleges that the Wexford employee's conclusion that Mohandie was able to engage in conversation and express his needs "was a proximate cause of the refusal to require that [he] be housed in a one-person cell." *Id.* ¶ 18. Mohandie also asserts that he "will be in imminent danger of attack if he is placed in a two-person cell." *Id.* ¶ 25.

After Mohandie filed his second-amended complaint, Warden Varga and Wexford filed motions to dismiss. Dkts. 62, 67. Instead of ruling on those motions, this Court ordered that Mohandie show cause why this case should not be dismissed as not justiciable. Dkt. 96. Having reviewed the parties' arguments, this Court now dismisses Mohandie's second-amended complaint without prejudice. Mohandie has not alleged a case or controversy within the meaning of Article III.

I.  Analysis

Article III of the U.S. Constitution limits federal court authority to cases or controversies of a judicial nature. U.S. Const. art. III, § 2. Thus, if a claim "rests upon 'contingent future events that may not occur as anticipated or indeed at all,'" then that claim is not yet ripe for review in federal court. *Texas v. United States*, 523 U.S. 296, 300 (1998) (quoting *Thomas v. Union Carbide Agricultural Products*

*Co.*, 473 U.S. 568, 581 (1985)). Similarly, if a claim was once ripe but has since lost its purpose, that claim is no longer presents a live controversy and again fails to present a justiciable case. *Renne v. Geary*, 501 U.S. 312, 320–21 (1991) (discussing mootness doctrine).

And the case or controversy requirement also means that the plaintiffs must have standing to sue. They must have suffered a harm that is concrete and particular to them, that is redressable by the relief sought, and that is fairly traceable to the defendant's allegedly wrongful act. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992). Because these requirements speak to the constitutional power of the federal court to hear the plaintiff's claim, they exist regardless of the claim's source of law.

## A. Mootness

To be sure, mootness is a concern in this case. Mohandie no longer resides at Dixon Correctional Center, where the alleged misdeeds occurred and from whom he seeks injunctive relief. Because Mohandie is no longer subject to the defendants' actions, any prospective relief would fail to remedy any presently existing harm. In *Ortiz v. Downey*, the Seventh Circuit explained that because the plaintiff inmate had been transferred to a different facility, "the district court could grant no prospective relief to [him] against these defendants." 561 F.3d 664, 668 (7th Cir. 2009). Though his damages claim was still live, the Circuit deemed "speculative" the notion that granting injunctive relief would redress any harm and declined to "assume without reason that Mr. Ortiz might once again find himself an inmate of

3

the same local institution and find himself subject to the restrictions of which he complains here." *Id.*

In response, Mohandie argues that voluntary cessation doctrine applies. Citing *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013), he contends that the burden is on the defendant "to show that plaintiff's transfer to the Joliet Treatment Center means 'that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur.'" Dkt. 98, at 2. Warden Varga, however, argues that he did not voluntarily comply; that he has not voluntarily implemented the changes Mohandie seeks. Instead, Warden Varga points out that because of Mohandie's transfer to another facility, the Warden "is entirely unable to exercise any discretion or control over" Mohandie. Dkt. 101, at 3.

No doubt, voluntary cessation doctrine places the burden on the defendant to show that the challenged conduct cannot reasonably be expected to start up again. *Already, LLC*, 568 U.S. at 96. But that doctrine seeks to counter a defendant's attempt to remove a federal court's jurisdiction by preempting the requested injunctive relief, even though that defendant can simply reverse course once the case is dismissed as moot. *EEOC v. Flambeau, Inc.*, 846 F.3d 941, 949 (7th Cir. 2017) (quoting *Already, LLC*, 568 U.S. at 91). But that situation does not exist here. Voluntary cessation doctrine does not apply because the defendant did not voluntarily comply. Instead of enacting any requested policy change, Mohandie was transferred to a treatment facility. Furthermore, because Mohandie is no longer under the control of the Warden, his choices do not affect Mohandie.

Because Mohandie no longer resides at the Warden's facility, and because no exception applies, his claims for injunctive and declaratory relief are dismissed as moot. *Higgason v. Farley*, 83 F.3d 807, 811 (7th Cir. 1996) (dismissing claims for declaratory and injunctive relief as moot because he had been transferred from the defendant's facility and failed to show that his return was a virtual certainty); *Accord Sutton v. Rasheed*, 323 F.3d 236, 248 (3d Cir. 2003) ("An inmate's transfer from the facility complained of generally moots the equitable and declaratory claims.").

But even if voluntary cessation did apply, that doctrine does not allow "the plaintiff to rely on theories of Article III injury that would fail to establish standing in the first place." *Already, LLC*, 568 U.S. at 96. In other words, though mootness doctrine asks whether a case or controversy still exists, a plaintiff must have established standing to sue in the first place. *Milwaukee Police Ass'n v. Bd. of Fire & Police Comm'rs of Milwaukee*, 708 F.3d 921, 929 (7th Cir. 2013).

**B. Standing**

Although Mohandie's claims for prospective relief are mooted by his transfer, he also lacks standing to bring suit in the first instance. Mohandie did not allege any concrete harm. And when prompted by this Court's order to show cause, Mohandie again failed to assert any concrete harm. Instead, he seemed to confuse the damages element of his claim with the constitutional requirement that plaintiff's must have suffered such harm. Dkt. 98, at 3–4.

5

As mentioned above, to satisfy Article III standing, a plaintiff must have suffered an injury in fact, that will be legally redressed by the relief sought, and that is fairly traceable to the act complained of. *Lujan*, 504 U.S. at 560–61. Here, the Court questioned whether Mohandie has suffered an injury in fact. Dkt. 96.

To satisfy the injury-in-fact prong, plaintiffs must allege that they have suffered "an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016). Furthermore, bare statutory violations, "divorced from any concrete harm," are not enough to satisfy the injury-in-fact requirement. *Id.* at 1549. In other words, Mohandie's allegation that the defendants violated statutory law is not enough to show an injury-in-fact. *Id.* ("Article III standing requires a concrete injury even in the context of a statutory violation. For that reason, Robins could not, for example, allege a bare procedural violation, divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III."). And his allegation that defendants' actions placed him at risk of harm is not enough; that risk of future harm must be real, not speculative. *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) ("Thus, we have repeatedly reiterated that threatened injury must be certainly impending to constitute injury in fact, and that allegations of possible future injury are not sufficient.") (cleaned up).

This case presents the Court with an unusual circumstance because Mohandie no longer resides in the same facility. This alone moots his claim for declaratory and injunctive relief. *Higgason v. Farley*, 83 F.3d 807, 811 (7th Cir.

1996) (dismissing claims for declaratory and injunctive relief as moot because he had been transferred from the defendant's facility and failed to show that his return was a virtual certainty). Mohandie alleges harm due to the decision not to require that he be housed alone. But he does not allege what that harm is, so the Court cannot determine how concrete it is, or if it is merely a bare, insufficient statutory violation.

Furthermore, Mohandie has not alleged whether he was actually housed with a cell mate. Despite the Court's efforts to determine if Mohandie has been, is currently, or will be housed with anybody else, his counsel steadfastly refuses to tell the Court. On the contrary, he alleged that he "will be in imminent danger of attack if he is placed in a two-person cell." Dkt. 54, ¶ 25. Mohandie's assertion from 2017 that his harm (meaning an assault by a cell mate) was "imminent" has not occurred as far as the Court knows. *City of Los Angeles v. Lyons*, 461 U.S. 95, 108 (1983). And a reasonable person would expect that if he had been assaulted by a cell mate because he was not provided single celling arrangements, his counsel would have notified the Court of this critical fact in response to the rule to show cause. The Court's analysis would be very different if Mohandie had been harmed in that way. The absence of harm over the course of four years undermines Mohandie's assertion that harm is imminent. *Lyons*, 461 U.S. at 108. If anything, the "if he is placed" language implies that he had not been housed with a cell mate. And Mohandie has since been moved to the Joliet Treatment Center. Thus, if he were going to

7

immediately suffer concrete harm as a result of the defendants' actions that he complains of, that harm would have likely already occurred.

To determine whether Mohandie had suffered a concrete injury, this Court ordered him to address the question. But he failed to do so, even though such harm would have already materialized. Instead, he explains that he "does not allege with specificity how the defendants' conduct 'harmed him, or that he was at imminent risk of harm because of the defendant's action.'" Dkt. 98, at 3. He then goes on to assert that he does not have to. This argument, however, betrays a fundamental misunderstanding of the task he was ordered to accomplish. The Court questioned his constitutional standing to sue. *Johnson v. Allsteel, Inc.*, 259 F.3d 885, 887 (2001) (disagreeing with the district court's conclusion but commending its decision to address standing *sua sponte*). The Court did not question whether his complaint satisfied the federal pleading standards. Instead, the Court questioned whether it possesses the constitutional authority to hear Mohandie's complaint.

Furthermore, Mohandie proceeds to conflate damages with concrete harm. He contends that he is permitted to seek nominal damages, relying on the Supreme Court's recent decision in *Uzuegbunam v. Preczewski*, 141 S. Ct. 792 (2021). But that misses the point. Whether nominal damages are enough to redress the harm is an entirely different question than whether the harm itself is concrete. Those are two different prongs of the standing analysis, and they must both be satisfied. Indeed, in the very same case Mohandie cites, the Supreme Court explained why he is wrong:

> This is not to say that a request for nominal damages guarantees entry to court. Our holding concerns only redressability. *It remains for the plaintiff to establish the other elements of standing (such as a particularized injury)*; plead a cognizable cause of action; and meet all other relevant requirements. We hold only that, for the purposes of Article III standing, nominal damages provide the necessary redress for a completed violation of a legal right.

*Id.* at 802 (citations omitted) (emphasis added). Thus, the Supreme Court expressly cabined its opinion within the confines of the redressability element to standing. It expressly did not abrogate the requirement that plaintiffs suffer a concrete harm.

Mohandie's citation to *Wells v. Caudill*, 967 F.3d 598 (7th Cir. 2020) is equally unhelpful. The passage he cites, which is notably part of a dissenting opinion, explains that *damages* are not an element to liability in a deliberate indifference claim.[1] Dkt. 98, at 4. There again, damages and concrete harm are not the same thing. That much is clear from *Uzuegbunam*, which as explained above, expressly noted that nominal damages could satisfy redressability but said nothing of the other standing requirements. *Uzuegbunam*, 141 S. Ct. at 802. More fundamentally though, the requirement that plaintiffs suffer a concrete harm is a constitutional threshold question. *Spokeo*, 136 S. Ct. at 1548. Damages, on the other hand, refers to "[m]oney claimed by, or ordered to be paid to, a person as compensation for loss or injury." *Damages*, Black's Law Dictionary (11th ed. 2019). Thus, damages remediate injury, but those terms are not interchangeable.

---

[1] The Court notes that Mohandie's argument did not at first explain that he was citing to a dissenting opinion. Still, he made a point to admit that mistake and notify the Court of it. Such candor is appreciated.

At bottom, Mohandie has failed to allege an injury, let alone a concrete one. When prompted, his response also failed to cure that problem. Thus, at this time, the Court lacks the constitutional authority to proceed.

## II. Conclusion

For the reasons explained above, the Court has no choice but to dismiss Mohandie's second-amended complaint. Still, the dismissal is without prejudice to amend the complaint by May 21, 2021. Mohandie will be afforded another opportunity to plead a justiciable case. But he should do so with this order in mind and in accordance with his requirements under Federal Rule of Civil Procedure 11. If Mohandie declines to amend his complaint by that date, this dismissal will be with prejudice.

Date: April 28, 2021

_____
Honorable Iain D. Johnston
United States District Judge
Northern District of Illinois
Western Division